No. 30,879.

BLANCHE WHITE, *Appellee*, v. THE KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant*.

(18 P. 2d 156.)

Opinion filed January 28, 1933.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave*, all of Kansas City, for the appellant.

*Blake A. Williamson* and *James K. Cubbison*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained by plaintiff, caused by negligence of defendant's motorman when plaintiff was in the act of alighting from one of defendant's street cars. Plaintiff recovered, and defendant appeals. It is contended a new trial should have been granted because of newly discovered evidence relating to an effect of the accident—nervousness of plaintiff.

Plaintiff had qualified herself to become a classical dancer, and when injured had a contract of employment to travel with a troupe and manager at a salary of $100 per week. The accident disturbed the sacroiliac joint, prevents plaintiff from appearing as a professional dancer, and will continue to do so indefinitely and, in the opinion of her physician, permanently.

Plaintiff testified that before the accident she had been strong, vigorous and healthy, and had not been nervous—"not that I know about." As a result of the accident she suffers from pain in her hip and side. If she makes certain turns or stoops over, she suffers sharp pain in the hip, becomes nauseated, and goes into a chill. She also testified she has become nervous, and said: "Well, I am just a complete wreck—just a complete bunch of nerves."

Plaintiff commenced taking dancing lessons in the early part of 1928, and the street-car accident occurred on August 31, 1930. In January, 1926, plaintiff commenced an action for divorce against her husband. In her verified petition she charged her husband with extreme cruelty. He cursed her, abused her, assaulted her, threatened to kill her, and she had been obliged to call the police to prevent him from doing her harm. On cross-examination plaintiff was confronted with this petition, and was asked if those things made her nervous. She answered:

"Oh, possibly at the time. Nothing permanent. I had gone about my way and had taken care of my daily activities without any apparent special nervousness coming from it. At least it didn't get me down. It didn't give me a pain in the hip."

The first action for divorce was dismissed. In August, 1929, while plaintiff was taking dancing lessons, and a year before the street-car accident, she commenced another action for divorce on the ground of extreme cruelty. The specifications were much the same as in the first petition, and plaintiff alleged she had lost her health and was an invalid. In connection with that action, and on September 9, 1929, plaintiff filed an affidavit reading as follows:

"That she is now sick and under the care of Dr. P. M. Krall, and has been under his care for three months, suffering from nervousness which affects her by a contraction of the blood vessels and causes her to become faint and rigid so that she is not able to do any work, and in fact should not be left by herself."

Plaintiff was fully cross-examined concerning the divorce petition and the affidavit. She said she did not remember reading the documents, said there must be some mistake about the affidavit, refused to answer some questions, and said she always told the truth.

The second divorce action was dismissed, and in June, 1930, plaintiff filed a third action. That action was tried, and plaintiff was granted a divorce on the ground of extreme cruelty. The allegations of the petition concerning extreme cruelty were similar to those of the other petitions. The petition also alleged that unless her husband was restrained by the court, he would carry out threats he had made to kill her, and the prayer was for protection of the court. Plaintiff was cross-examined with respect to this petition as follows:

"Q. Well, did any of that make you nervous, here about a couple of months before this accident? A. No, I don't know whether it did or not.
. . . . . . . . . . . . . . . .

"Q. Did that make you nervous, because you were afraid that he would come around and harm you? A. Oh, perhaps a little. Perhaps no more than talking to you right now. His abuse, perhaps, was no more than yours. Tongue lashing is the worst kind of abuse you can have.

"Q. Well, were you or were you not more nervous then than you are now? A. Absolutely not.

"Q. Which is which? I don't understand. A. I never knew what nervousness was·until the last—you might say—year and a half.

"Q. Oh, the last year and a half. Well, you knew what nervousness was September 9, 1929, didn't you? A. I don't remember.

"Q. In which you said that you had been under Dr. Krall's care for three months, suffering from nervousness? A. I don't remember of ever saying that."

The divorce petitions and the affidavit of September 9, 1929, were discovered while the trial was in progress. After the verdict for plaintiff was returned, defendant's attorneys procured a transcript of the testimony given at the trial of the last divorce action. This testimony was offered at the hearing on the motion for new trial in support of the specification of newly discovered material evidence which could not have been procured by exercise of reasonable diligence.

The trial of the divorce action occurred in February, 1931. Plaintiff described the brutality of her husband, and testified in part as follows:

"Q. What effect did his attitude have toward your health? A. I had a nervous breakdown, which caused me to have heart trouble. It affected the nerves in my heart, and I was practically an invalid for two years.

"Q. Under what physician? A. Dr. Krall.

. . . . . . . . . . .

"Q. Is your physical appearance and your health better now than it was when you started this case? A. Yes, sir; a hundred per cent."

A witness for plaintiff testified as follows:

"Q. What was the condition of her health, when you first knew her there? A. Well, she was in awfully poor health.

"Q. Is her health now like it was then? A. No, sir.

"Q. She was pretty near a shadow at that time? A. Absolutely."

Another witness testified as follows:

"Q. Tell the court if your sister was a healthy, strong, vigorous woman when she married him. A. When she married him?

"Q. Yes. A. When she married him she was in excellent health.

"Q. How was her health at the time of their separation? A. She was a nervous wreck.

"Q. She has improved a great deal since that time? A. I should say she has; yes, sir."

Whether the testimony in support of the motion for new trial might have been discovered with reasonable diligence and might have been produced at the trial of the personal-injury action need not be discussed.

Plaintiff's testimony that previous to the personal-injury action she had been strong and healthy and free from nervousness was contradicted by statements in her divorce petitions and the affidavit of September 9, 1929. The contradictions were fully exploited on her cross-examination. The jury returned a verdict in her favor. The testimony offered in support of the motion for new trial was offered purely for the purpose of further impeachment of the witness. It was merely cumulative, and after a new trial has been denied, this court does not reverse for the purpose of admitting cumulative evidence or impeaching evidence, even although it be very strong.

Besides what has been said, the nervousness from which plaintiff suffered before she separated from her husband was consequent upon fear, cruel treatment and domestic infelicity. The testimony offered in support of the motion for new trial indicated quite clearly she had recovered from that nervousness after separation from her husband and before February, 1931. The accident occurred in August, 1930. The nervousness from which she suffered after the accident was consequent upon physical injury. This consequence was established by medical testimony as well as by her own testimony, and there is no reason to believe that if the discovered evidence had been offered at the trial it would have changed the result. Indeed, it would have tended to strengthen plaintiff's case.

Defendant contends the verdict for plaintiff for $3,000 was the result of passion and prejudice on the part of the jury. Plaintiff was examined by three physicians appointed by the court, and they gave opinions to the effect that there was not much, if anything, the matter with plaintiff, and what troubles she had were not the result of the accident. Defendant stresses this part of their testimony. Portions of their testimony tended to corroborate the testimony of plaintiff and her physician, and the assignment of error that the verdict was the result of passion and prejudice on the part of the jury presents to this court nothing but an ordinary jury question.

The judgment of the district court is affirmed.

THIELE, J., not participating.